**MULCAHY LLP**
James M. Mulcahy (SBN 213547)
*jmulcahy@mulcahyllp.com*
Filemon Carrillo (SBN 314220)
*fcarrillo@mulcahyllp.com*
Four Park Plaza, Suite 1230
Irvine, California 92614
Telephone: (949) 252-9377
Facsimile: (949) 252-0090

Attorneys for Plaintiff,
*The Tutoring Center Franchise Corp.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE TUTORING CENTER FRANCHISE CORP., a California corporation, | Case No.:   2:19-cv-9149 |
| Plaintiff, | |
| v. | **COMPLAINT FOR BREACH OF CONTRACT** |
| MCKELL KANE, an individual; and DOES 1-10, | |
| Defendants. | |

Plaintiff THE TUTORING CENTER FRANCHISE CORP. ("TCFC"), alleges as follows:

## NATURE OF ACTION

1.     This is an action by Plaintiff TCFC, a franchisor of tutoring center businesses, against Defendant McKell Kane ("Defendant"), a current franchisee of TCFC, seeking a judgment for breach of contract.

2.      TCFC is a franchisor of learning centers that offer assessment, tutoring, and test preparation services for school-age children offered under the mark "The Tutoring Center." TCFC offers and currently has franchises nationwide.

3.     In July 2019, after successfully completing the application and vetting process to become a TCFC franchisee, Defendant entered into a franchise agreement with TCFC. At that time, Defendant was engaged with talks to purchase the assets of an operational TCFC franchisee, BR Ventures, Inc. ("BR Ventures"). However, the franchise agreement did not have any condition precedent relating to the completion of Defendant's purchase of assets from the existing TCFC franchisee. Any potential purchase of assets by Defendant was separate from the executed franchise agreement for her operation of a franchise location and had no bearing on Defendant's obligations as a franchisee under the franchise agreement.

4.     At the time of execution of the franchise agreement, Defendant agreed to pay a lower transfer fee of $15,000 in lieu of a non-refundable franchise fee of $32,000 and a support and training fee of $8,000. TCFC agreed to the payment of the transfer fee in lieu of the other fees on the basis that Defendant would be purchasing and transferring the existing operation of BR Ventures.

5.     However, on or about September 5, 2019, Defendant sent a letter stating that she was not moving forward with purchasing the BR Ventures assets. Additionally, Defendant stated that she sought a refund of the transfer fee paid to TCFC.

6.     Shortly thereafter, on September 27, 2019, TCFC sent a demand letter to counsel for Defendant seeking adequate assurances that Defendant intended to fulfill her obligations under the franchise agreement. TCFC notified Defendant that she must either

proceed with the purchase of the BR Ventures assets or immediately begin the search for a new location for Defendant's franchise per the franchise agreement. Additionally, TCFC noted that Defendant would not be privy to a refund of the transfer fee because she would owe the difference of $25,000 for the franchise fee and support and training fee if she did not purchase the BR Ventures assets. TCFC reminded Defendant that her obligations in the franchise agreement were separate from any discussions she had with BR Ventures, and TCFC requested a response within 14 days of receipt of the demand letter.

7.      Defendant failed to respond or communicate with TCFC by the reasonable deadline of TCFC's request for adequate assurances.

8.      As such, TCFC seeks a judgment for damages owed to TCFC according to the Franchise Agreement as a result of Defendant's breach of the franchise agreement.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the action under diversity of citizenship jurisdiction, 28 U.S.C. § 1332. Plaintiff TCFC is a California corporation with its principal place of business in Los Angeles County, California. On information and belief, Defendant is a citizen and resident of Arizona.

10.      TCFC has satisfied the amount in controversy requirement as the demands by Defendant and potential liability, including attorneys' fees, exceeds the jurisdictional threshold of $75,000.

11.      This Court has personal jurisdiction over Defendant because she has sufficient continuous and systematic minimum contacts with California that she foresaw the possibility of being sued in this state, including but not limited to, entering into the franchise agreement which is the subject matter of this dispute and provides for jurisdiction in Los Angeles County, California. (*See* Exhibit A, § 32(B), *infra* p. 4).

12.      The United States District Court for the Central District of California is the proper venue for the trial of this action as to Defendant because the franchise agreement specifically provides that all claims shall be brought in the appropriate state or federal court with jurisdiction in Los Angeles County, California.  (*Id.*).

**THE PARTIES**

13.     TCFC is a California corporation with its principal place of business in Los Angeles County, California, and is the franchisor of "The Tutoring Center" franchised businesses.

14.     Defendant McKell Kane is an individual residing in or near Anthem, Arizona, and is a current franchisee of TCFC.

15.     TCFC is unaware of the true names and capacities of Defendants named Does 1 through 10 and therefore sues these Defendants by fictitious names. Each of the Doe Defendants is and was responsible or liable in whole or in part for the acts and omissions alleged in this Complaint.

16.     Except as may be indicated to the contrary, Defendant McKell Kane and Does 1 through 10 are referred to collectively as "Defendants" herein.

17.     At all times mentioned herein, Defendants, and each of them, were the agents, servants and employees of each remaining Defendant and were, in doing the things complained of, acting within the scope of their agency and/or employment, and acting with the full knowledge or subsequent ratification of their principals or employers.

**FACTUAL BACKGROUND**

18.     TCFC is a franchisor of learning centers that offer assessment, tutoring, and test preparation services for school-age children offered under the mark "The Tutoring Center." It offers and currently has franchises nationwide. In exchange for the right to operate a Tutoring Center location using TCFC's trademarks and operating procedures, franchisees agree to pay an initial franchise fee and continuing royalties and other administrative fees.

***The Parties' Franchise Agreement***

19.     On or about July 22, 2019, Defendant executed a franchise agreement (the "Franchise Agreement" or "Agreement") with TCFC for the operation of a Tutoring Center business (the "Center") in Arizona. A true and accurate copy of the Franchise Agreement is attached hereto as Exhibit A.

20.     The Franchise Agreement sets forth the terms concerning the initial franchise fee (the "Franchise Fee") and the ongoing fees due TCFC during the term of the Agreement. Section 2 of the Agreement states: "Upon the execution of this Agreement, Franchisee shall pay Franchisor an initial franchise fee of Thirty Two Thousand Dollars ($32,000) by cashier's check. This fee is fully earned when this Agreement is executed and is non-refundable." (Ex. A, § 2).

21.     Moreover, the Agreement required Defendant to, "[u]pon execution of th[e] Agreement, Franchisee shall pay to Franchisor its then-current support and training fee . . . ." (*Id.*, § 5.A.i.). In exchange, the Agreement required TCFC to "provide [Defendant] with an initial training program . . . at Franchisor's corporate training facility in Long Beach, California or at another location designated by Franchisor." (*Id.*).

22.     Additionally, the Franchise Agreement requires that Defendant pay certain royalties after her Center is open, and to pay fees including a Semi Annual Program Fee and a Technology Fee. (*Id.*, § 12).

23.     In the case of a transfer of an existing franchise location, the Franchise Agreement required "the transferee or Franchisee shall have fully paid to Franchisor a Transfer Fee in the amount of Fifteen Thousand Dollars ($15,000). (*Id.*, § 20.D.v.).

24.     Upon executing the Agreement, Defendant submitted a payment for the $15,000.00 Transfer Fee required under Section 20.D.v. of the Agreement on the basis that she would purchase the existing BR Ventures assets, in lieu of the initial Franchise Fee and support and training fee.

***Defendant's Obligation Under the Agreement Are to Either Purchase the BR Ventures Assets or Search for a New Location***

25.     TCFC's system also includes detailed guidelines and terms concerning the identification of the location of the franchisee's Center. Typically, a franchisee will execute a franchise agreement and identify a geographic area where that franchisee would like to develop a new or purchase an existing franchise, known as the General Vicinity. Additionally, where a location has already been identified or an existing franchise location

1  is being transferred, the franchisee can further indicate this location on Schedule A to the
2  Franchise Agreement.

3      26.      The Franchise Agreement incorporates this system and guidelines and sets
4  forth the terms that apply to Defendant's search for and identification of the location of her
5  Center.

6      27.      Specifically, Section 4.A.i. of the Agreement states:

7      Franchisee shall operate a single Center at one location approved by Franchisor
8      and identified in Schedule A (the "Approved Location"). If the Approved
       Location has not been identified at the time this Agreement is signed, you ***must***
9      ***find a site within the geographic area identified as the "General Vicinity" on***
       ***Schedule A*** and request Franchisor's written approval of the site. ***You agree***
10     ***that a) the General Vicinity is not, and shall not be construed to be, your***
       ***Territory, b) you will not propose or be permitted to acquire any site located***
11     ***in another Center's Territory and c) you do not have any exclusive rights in***
12     ***the General Vicinity. Franchisor can locate or authorize, and may already***
       ***have authorized***, ***others to locate a Center in the General Vicinity.*** After
13     Franchisor has approved the proposed site for your Center, a) the specific
14     address of the Center will automatically be the Approved Location designated
       in Schedule A, as if originally set forth in Schedule A, b) your Territory will be
15     determined as specified on Schedule A, and c) the General Vicinity
16     identification will lapse and be without force or effect.
17
18  (Ex. A, § 4.A.i (emphasis added)). It goes on to state that Defendant is "solely responsible
19  for identifying a suitable location for the Center and for obtaining Franchisor's consent to
20  the site as [Defendant's] Approved Location." (*Id.*, § 4.A.ii.).

21      28.      Schedule A to the Franchise Agreement provides additional terms concerning,
22  among others, Defendant's site selection, the approved location and territory. It states:
23  **"You must look for a site for your center only in the General Vicinity, unless otherwise**
24  **authorized by Franchisor in writing."** (*Id.* at pp. 44, Schedule A (emphasis in original)).

25      29.      On the basis of Defendant's representations that she would purchase the BR
26  Ventures franchise location, TCFC agreed to accept payment of the Transfer Fee and
27  Schedule A to the Franchise Agreement indicated that Defendant had an Approved

28

Location at 6525 West Happy Valley Rd, Suite C101, Glendale, AZ 85310, which is the location of the BR Ventures franchise.

30.     Additionally, the parties identified the General Vicinity for Defendant as "Glendale, AZ." (*Id.*). Defendant was well aware of and expressly agreed to TCFC's system and terms concerning the identification of the Center, including that Defendant would need to identify a new location in the General Vicinity if she did not complete the purchase of the BR Ventures assets.

31.     Specifically, Section 4.D. of the Agreement states:

> If the lease for the site of the Center expires or terminates without fault of Franchisee or if the site is destroyed, condemned or otherwise rendered unusable, Franchisor may, in its sole discretion, consent to Franchisee relocating the Center to another location acceptable to Franchisor. Any relocation shall be at Franchisee's sole expense, and Franchisor shall have the right to charge Franchisee for legal, accounting and any other expenses incurred by Franchisor in providing such assistance.

(*Id.*, § 4.D). As such, Defendant is expected to seek a location for her franchise if her original intended location is rendered unusable for her purpose. Even if Defendant does not purchase the BR Ventures assets, she must continue with searching for a location for her franchise.

***Defendant Took Advantage of TCFC by Signing the Franchise Agreement, Subsequently Undergoing Training, and Obtaining Proprietary Information***

32.     After signing the Franchise Agreement, Defendant has availed herself to proprietary documents from TCFC and undergone TCFC training, at great expense to TCFC.

33.     Following Defendant's signing of the Franchise Agreement, in July 2019, Defendant attended TCFC franchise training where she learned about proprietary information of TCFC. Defendant also received a copy of the TCFC operations manual, which included proprietary documentation necessary to running a TCFC franchise location.

34.     Thereafter, TCFC assigned Defendant to a franchise mentor and Defendant spent time at the franchise mentor's location completing additional franchise training in

-6-

August 2019. All of these action and expenses were done with the expectation that Defendant would fulfill her obligations as a franchisee according to the Franchise Agreement.

***Defendant Now Demands a Refund of the Transfer Fee from TCFC And Has Failed to Respond to TCFC's Request for Adequate Assurances That Defendant Will Fulfill Her Obligations Under the Franchise Agreement***

35.     In September 2019, Defendant wrote TCFC indicating that she wanted to have TCFC return the $15,000 for the Transfer Fee she had paid.

36.     Defendant stated that she was terminating her efforts to enter into a purchase agreement for the assets of BR Ventures. Defendant stated that as a result of her terminating her efforts to purchase the BR Ventures assets, she also sought the refund of the Transfer Fee paid as part of the validly executed Franchise Agreement. Defendant is attempting to back out of the Franchise Agreement without any valid reason.

37.     TCFC sent a letter to counsel for Defendant reminding her that the Franchise Agreement that she executed was not contingent on purchasing the BR Ventures assets. Instead, TCFC requested adequate assurances that Defendant would fulfill her obligations of opening a franchise location. TCFC requested a response within 14 days from receipt of the letter. However, Defendant has not responded to TCFC. A true and accurate copy of the letter sent to counsel for Defendant is attached hereto as Exhibit B.

38.     Defendant's refusal to respond is a clear indication of repudiation of the Franchise Agreement. Defendant is showing that she will not fulfill her obligations to search for a suitable location nor will she proceed with opening a location and making the requisite payments to TCFC according to the Franchise Agreement.

39.     Without any basis whatsoever, Defendant is demanding that TCFC return the Transfer Fee and has failed to provide any adequate assurances that Defendant will fulfill her obligations under the Franchise Agreement. At this time, Defendant is in breach of the Franchise Agreement due to anticipatory repudiation by failing to provide adequate assurances in response to TCFC's justified demand letter.

40.     TCFC brings this action seeking a judgment for the damages that TCFC will suffer as a result of Defendant's breach of the Franchise Agreement.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

41.     TCFC repeats, realleges, and incorporates by reference all previous paragraphs of its Complaint as though fully set forth herein.

42.     On July 22, 2019, TCFC and Defendant entered into the Franchise Agreement.

43.     TCFC has performed all things required of them under the terms of the Franchise Agreement, except those things the performance of which was excused by Defendant's breach of the Franchise Agreement.

44.     The Franchise Agreement requires at Section 4.A.i. that Defendant operate a TCFC location. By entering into the agreement, Defendant agreed to either purchase and operate the BR Ventures TCFC franchise location or open a new location.

45.     The Franchise Agreement requires at Section 2 and 5.A.i. that Defendant pay a non-refundable Franchise Fee of $32,000 and a support and training fee of $8,000 if Defendant is not purchasing the BR Ventures assets as a transfer. By entering into the agreement, Defendant agreed to pay either the Transfer Fee or the Franchise Fee and support and training fee.

46.     The Franchise Agreement requires at Section 12 that Defendant pay certain royalties after her Center is open, and to pay fees including a Semi Annual Program Fee and a Technology Fee. By entering into the agreement, Defendant agreed to pay certain royalties and fees, including the Semi Annual Program Fee and the Technology Fee.

47.     In September 2019, Defendant communicated to TCFC that she did not intend to purchase the BR Ventures assets and also sought a refund of her Transfer Fee paid to TCFC.

48.     On September 27, 2019, TCFC sought adequate assurances of performance from Defendant and asked for such assurances to be made no later than 14 days after receipt

of the letter. TCFC reminded Defendant of her obligation to either complete purchase of the BR Ventures assets or to open a new location.

49.     More than three weeks later, Defendant has failed to respond to TCFC or give adequate assurances. Defendant's termination of efforts to purchase the BR Ventures assets, request for refund of the Transfer Fee from TCFC, and failure to provide adequate assurances in response to TCFC's justified demand amount to repudiation of the valid Franchise Agreement by Defendant.

50.     Defendant is not owed any refund of the Transfer Fee, and has no basis for such a request.

51.     As a direct result of Defendant's breach of the Franchise Agreement, Defendant is responsible for damages to TCFC based on what TCFC would receive in payments according to the Franchise Agreement. Therefore, Defendant is liable for such damages, according to proof, in excess of $75,000.00, as payable according to the Franchise Agreement.

52.     In addition to the above, TCFC is also entitled, under Section 28 and Section 32.E of the Franchise Agreement, to recover its reasonable attorneys' fees and legal expenses incurred in enforcing the terms of the Franchise Agreement.

**WHEREFORE**, TCFC seeks judgment against Defendants, and each of them, as follows:

1.     On the First Claim for Breach of Contract, for judgment against Defendant as follows:

    a.  That Defendant is liable for damages, according to proof, in excess of $75,000.00;

2.     For reasonable costs and attorneys' fees incurred in this action pursuant to Section 28 and Section 32.E of the Franchise Agreement; and

3.     For such other and further relief as the Court may deem just and proper.

1    DATED: October 24, 2019                    **MULCAHY LLP**

2

3                                          By: _James M. Mulcahy_____

4                                              James M. Mulcahy
                                               Filemon Carrillo
5                                              *Attorneys for Plaintiff*
                                               *The Tutoring Center*
6                                              *Franchise Corp.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28